OPINION
{¶ 1} Guy A. LeValley appeals from his conviction and sentence following a bench trial in Fairborn Municipal Court on charges of aggravated menacing and violating a civil protection order.
 {¶ 2} LeValley advances three assignments of error on appeal. First, he contends the trial court erred in overruling a Crim. R. 33 motion for new trial. Second, he claims his convictions are against the manifest weight of the evidence presented at trial. Third, he asserts that he received constitutionally ineffective assistance of counsel.
 {¶ 3} The record reflects that LeValley was charged with aggravated menacing in municipal court case number 05-CRB-02246. The charge stemmed from an incident that occurred on October 17, 2005. At trial, the State presented evidence that two teen-aged boys, Tyler Williams and Kyle McCabe, were working on a truck outside Williams' house. While working, they saw LeValley's son, Brandon, walk onto the property to retrieve a football. Due to prior neighborhood disputes, Brandon was not allowed on the Williams' property. Therefore, Tyler called the police to report a trespass.
 {¶ 4} When Brandon learned that the police were on their way, he called his father, LeValley, who was working nearby as a mail carrier. LeValley drove his mail truck to the scene and spoke to Tyler and Kyle before the police arrived. According to the two boys, LeValley appeared angry and cursed at them. Both boys testified that LeValley also threatened to shoot Kyle. The boys stated that they took the threat seriously and were afraid. LeValley testified in his own defense. He denied threatening to shoot Kyle. According to LeValley, he merely threatened to sue Kyle for injuries he previously had sustained when Kyle, playing "chicken," had jumped in front of his motorcycle and caused him to crash. LeValley opined that Tyler and Kyle either had misunderstood *Page 3 
what he said or had fabricated the shooting threat to cause him trouble. Sitting as the trier of fact, the trial court determined that LeValley had lost his temper and had threatened to shoot Kyle. As a result, the trial court found him guilty of aggravated menacing, a first-degree misdemeanor. The trial court imposed a $200 fine and costs, along with a suspended jail sentence, and placed LeValley on up to five years of probation.
 {¶ 5} After imposing the foregoing sentence, the trial court turned to municipal court case number 05-CRB-02409, which involved a charge against LeValley for violating a civil protection order. The record reflects that Tyler Williams' mother, Sandra, had obtained the ex parte protection order against LeValley on October 24, 2005. It was served on him four days later. Among other things, the order provided that LeValley "SHALL NOT ENTER the * * * place of employment * * * of the protected persons named in this order, including the buildings, grounds and parking lots at those locations." The "protected persons" named in the order included Sandra Williams' teen-aged daughter, Nichole.
 {¶ 6} Nichole testified at trial that she saw LeValley inside her place of employment, a Kroger grocery store, while she was working on November 1, 2005. Nichole stated that LeValley knew she worked at the store, and she previously had seen him there "a lot" during her two and one-half years of employment. Nichole reported the November 1, 2005, incident to her mother, who called the police. Beavercreek police officer Jennifer Snyder arrested LeValley at his home a short time later. Upon his arrest, LeValley admitted knowing Nichole worked at the store and confirmed his awareness of the protection order. Based on the foregoing evidence, the trial court found him guilty. It *Page 4 
imposed a $100 fine and costs, along with a suspended jail sentence, and placed LeValley on up to five years of probation.
 {¶ 7} LeValley subsequently filed a Crim. R. 33 motion for a new trial under both municipal court case numbers. The trial court overruled the motions on March 31, 2006. This timely appeal followed.[1]
 {¶ 8} In his first assignment of error, LeValley contends the trial court erred in denying him a new trial on the charges of aggravated menacing and violating the civil protection order.
 {¶ 9} He argues that a new trial was warranted in each of the cases based on his trial counsel's failure to call defense witnesses and failure to request separate dates for his two trials. With regard to the issue of defense witnesses, LeValley notes that his Crim. R. 33 motions included affidavits from his son, Brandon, and another teen, Joshua Stauffer, who resided with the LeValley family at the time in question. In their affidavits, Brandon and Joshua stated that they heard LeValley threaten to "sue" rather than "shoot" Kyle McCabe. They also averred that they were present and ready to testify at trial but were not called by defense counsel. LeValley's Crim. R. 33 motions also included his own affidavit in which he averred that his attorney was aware of Brandon's and Joshua's presence and ability to corroborate his version of events. In addition, LeValley averred that another son could have corroborated his claim that he did not *Page 5 
know Nichole Williams was present in the Kroger store on November 1, 2005. Finally, he stated that his attorney never consulted him about having both cases tried on the same day.
 {¶ 10} LeValley asserts on appeal that his affidavits provided grounds for a new trial under Crim. R. 33(A)(4) and (A)(6). The former provision authorizes a new trial when "the verdict is not sustained by sufficient evidence or is contrary to law." The latter provision allows a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at trial."
 {¶ 11} Upon review, we find no merit in LeValley's arguments about his motions for a new trial. The fact that LeValley might have witnesses who could have corroborated his testimony does not affect the sufficiency of the evidence the State presented at trial. Nor does the existence of uncalled witnesses establish that LeValley's convictions are contrary to law. Moreover, the affidavits do not qualify as newly discovered evidence. In his own affidavit, LeValley admits that his witnesses were present and able to testify at trial and that his attorney was aware of their presence. Therefore, they cannot be considered newly discovered within the meaning of Crim. R. 33(A)(6).[2] Finally, LeValley has failed to demonstrate how defense counsel's failure to *Page 6 
request separate trial dates for the two cases against him fits within the grounds for a new trial provided by Crim. R. 33(A)(4) or (A)(6).
 {¶ 12} We note too that LeValley incorrectly relies on State v.Bays (Jan. 30, 1998), Greene App. No. 96-CA-118, to support his Crim. R. 33 motion. Bays is distinguishable insofar as it involved a petition for post-conviction relief under R.C. § 2953.21 rather than a motion for a new trial under Crim. R. 33. In Bays, we held that the defendant was entitled to a hearing on his post-conviction relief petition based on his presentation of affidavits from potential defense witnesses who allegedly were available but were uncalled by defense counsel at trial. While Bays suggests that LeValley conceivably could have a post-conviction relief claim, it does not support his motion for a new trial under Crim. R. 33(A)(4) or Crim. R. 33(A)(6) based on the insufficiency of the State's evidence or the existence of newly discovered evidence. Accordingly, we overrule the first assignment of error.
 {¶ 13} In his second assignment of error, LeValley claims his convictions for aggravated menacing and violating the civil protection order are against the manifest weight of the evidence. With regard to the aggravated menacing conviction, he contends Tyler Williams and Kyle McCabe had a "vendetta" against him, that the two boys *Page 7 
contradicted one another, and that it "would not make sense" for him to have threatened to shoot Kyle. LeValley also stresses his own testimony in which he denied threatening to shoot Kyle. With regard to the protection-order violation, LeValley contends his conviction is against the weight of the evidence because he did not act recklessly. In particular, he stresses that he did not approach Nichole in the Kroger store and left after seeing her there.
 {¶ 14} Upon review, we find LeValley's manifest-weight-of-the-evidence argument to be unpersuasive. When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 15} Here the evidence does not weigh heavily against LeValley's convictions. Tyler and Kyle consistently testified that LeValley had threatened to shoot Kyle. Defense counsel cross examined them about the existence of animosity between themselves and LeValley. In addition, LeValley denied their allegation and insisted that he merely had threatened to sue Kyle. Ultimately, then, the trial court was confronted with a credibility determination. In its role as fact finder, the trial court determined that LeValley had lost his temper and had threatened to shoot Kyle. On issues of witness credibility, a *Page 8 
reviewing court will not substitute its judgment for that of the trier of fact unless it is patently apparent that the fact finder lost its way. State v. McCallister, Montgomery App. No. 21637, 2007-Ohio-576, ]}19, citing State v. Johnson, Montgomery App. No. 21335,2006-Ohio-4935, ]}26. Based on our review of the trial transcript, we conclude that the trial court reasonably could have elected to believe the State's witnesses and to disbelieve LeValley. We cannot say the trial court lost its way in finding LeValley guilty of aggravated menacing.
 {¶ 16} We reach the same conclusion with regard to the protection-order violation. LeValley was convicted under R.C. § 2919.27, which makes it a crime to recklessly violate a protection order. LeValley asserts that he did not act recklessly because he did not approach Nichole Williams inside the store and left after seeing her. We disagree. The protection order in the present case prohibited LeValley from entering Nichole's place of employment, including the building, grounds, and parking lot. At trial, the State presented evidence establishing that LeValley entered the Kroger store with awareness of the protection order and with awareness that the Kroger store was Nichole's place of employment. Therefore, the trial court's finding that LeValley recklessly violated the order is not against the manifest weight of the evidence. The second assignment of error is overruled.
 {¶ 17} In his third assignment of error, LeValley asserts that he received constitutionally ineffective assistance of counsel at trial. In support, he contends his attorney improperly advised him to waive a jury trial, failed to call the exculpatory witnesses mentioned above, and neglected to object to the trial court hearing the two cases against him "simultaneously." *Page 9 
 {¶ 18} To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice.Strickland v. Washington (1984), 466 U.S. 668. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within a wide range of reasonable assistance. Id. The adequacy of counsel's performance is reviewed in light of all the circumstances surrounding the trial. Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at trial.State v. Cook (1992), 65 Ohio St.3d 516, 524. Reversal is warranted only where a defendant demonstrates a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 19} With the foregoing standards in mind, we find no ineffective assistance of trial counsel. Although LeValley contends "[a] jury would not have been so quick to believe" the allegations of Tyler Williams and Kyle McCabe, this assertion is pure speculation. Defense counsel's advice to waive a jury trial fell within the scope of reasonable trial strategy. We are equally unpersuaded by LeValley's argument about defense counsel's failure to object to the trial court hearing both cases on the same day. Contrary to LeValley's argument on appeal, the trial court did not hear the cases "simultaneously." Instead, it heard and disposed of the aggravated menacing case before turning to the protection-order violation case. We fail to see how LeValley was prejudiced by the trial court hearing both cases on the same day rather than on different days.
 {¶ 20} Finally, we find no merit in LeValley's argument that his attorney provided *Page 10 
ineffective assistance by failing to call additional witnesses. In the protection-order case, LeValley contends his attorney should have called his son, fourteen-year-old Josh LeValley, to corroborate his claim that he did not know Nichole Williams was in the Kroger store. We note, however, that LeValley's violation of the protection order did not turn on whether he knew Nichole was present on November 1, 2005. The protection order prohibited LeValley from entering Nichole's place of employment, period, regardless of whether he believed she was present. Therefore, we find no likelihood that testimony from Josh LeValley would have resulted in a different verdict.
 {¶ 21} Although the aggravated menacing case perhaps presents a closer question, we note that "the failure to call a witness to testify ordinarily is a matter of trial strategy that will not be second-guessed by a reviewing court." State v. Mills, Greene App. No. 2002-CA-114,2004-Ohio-267, ]}8, citing State v. Treesh, 90 Ohio St.3d 460, 490,2001-Ohio-4. Moreover, defense counsel's decision not to call a witness is afforded a presumption of reasonableness. State v. Ramirez, Clermont App. No. CA2004-06-046, 2005-Ohio-2662, ¶ 39.
 {¶ 22} Here we find defense counsel's decision not to call Brandon LeValley and Joshua Stauffer as witnesses to be within the realm of reasonable trial strategy. Although LeValley contends the boys would have corroborated his testimony that he merely threatened to sue Kyle McCabe, defense counsel reasonably may have questioned the credibility of any such testimony and may have determined that it would do more harm than good. In reaching this conclusion, we note that Brandon is LeValley's son and Joshua resided with the LeValleys at the time in question. Brandon and Joshua both were interviewed by Beavercreek police officer Jennifer Snyder in *Page 11 
connection with the alleged shooting threat. The record contains copies of written statements that the boys gave Snyder. Joshua Stauffer's statement includes an acknowledgment that he was "too far away to hear what [LeValley] was saying" to Kyle. The statement provided by Brandon LeValley, who was with Joshua Stauffer at the time of the incident, fails to mention anything about having heard his father threaten to sue Kyle. Defense counsel, who presumably had reviewed these police statements, was aware that the boys were available to testify. Therefore, his failure to call them as witnesses must have been a conscious choice. In light of the boys' police statements, we cannot say that this choice was unreasonable. Calling the boys as witnesses would have opened them up to cross examination regarding their police statements. Moreover, given their close relationship with LeValley, defense counsel reasonably may have decided that any corroboration the boys could provide would be of limited persuasive value. Even if defense counsel's failure to call the boys as witnesses constituted a questionable trial strategy, it would not compel a finding of ineffectiveness. State v. Smith, 89 Ohio St.3d 323, 328, 2000-Ohio-166. In light of the substantial deference owed to defense counsel's trial tactics, we find no deficient representation arising from the failure to call Brandon and Joshua as witnesses. LeValley's third assignment of error is overruled.
 {¶ 23} The judgment of the Fairborn Municipal Court is hereby affirmed.
FAIN and GRADY, JJ., concur.
[1] Although nothing in the record indicates that LeValley ever requested or obtained a stay of his sentences pending appeal, we note, sua sponte, that his continuing term of probation is penal in nature and is sufficient to overcome any potential mootness concerns. See City ofLakewood v. Papadelis (1987), 32 Ohio St.3d 1, 2 n. 1.
[2] Insofar as LeValley believes his attorney provided ineffective assistance by failing to call these corroborating witnesses, he arguably might have had grounds for relief under Crim. R. 33(A)(1), which authorizes a new trial based on an irregularity in the proceedings that prevents a defendant from having a fair trial, or Crim. R. 33(E)(5), which allows a new trial where the record affirmatively demonstrates that the defendant was prejudiced or prevented from having a fair trial. See, e.g., State v. Lordi, 140 Ohio App.3d 561, 569, 2000-Ohio-2582
("Although a petition for post-conviction relief may provide a more effective and appropriate vehicle for the assertion of an ineffective-assistance-of-counsel claim, a defendant may validly assert the denial of effective assistance of counsel as a basis for new trial pursuant to Crim. R. 33(A)(1) or (E)(5)."). In his first assignment of error, however, LeValley argues only that he was entitled to a new trial under Crim. R. 33(A)(4), based on the alleged insufficiency of the State's evidence, or Crim. R. 33(A)(6) based on newly discovered evidence. For the reasons set forth above, we conclude that LeValley's affidavits did not entitle him to a new trial under Crim. R. 33(A)(4) or (A)(6). In any event, we point out that we have addressed defense counsel's failure to call corroborating witnesses in the context of an ineffective assistance of counsel claim, infra, under LeValley's third assignment of error. *Page 1