[Cite as *State v. Myles*, 2013-Ohio-2227.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                        :               C.A. CASE NO.    25297

v.                                               :               T.C. NO.    12CRB403

ROBIN E. MYLES                                   :               (Criminal appeal from
                                                         Municipal Court)

    Defendant-Appellant                       :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   31st   day of       May      , 2013.

. . . . . . . . . .

RAYMOND J. DUNDES, Atty. Reg. No. 0041515, Prosecuting Attorney, City of Trotwood, 195 South Clayton Road, New Lebanon, Ohio 45345
        Attorney for Plaintiff-Appellee

DWIGHT D. BRANNON, Atty. Reg. No. 0021657 and MATTHEW C. SCHULTZ, Atty. Reg. No. 0080142, 130 West Second Street, Suite 900, Dayton, Ohio 45402
        Attorneys for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

    **{¶ 1}**   Robin E. Myles appeals from a judgment of the Montgomery County

Municipal Court, Western Division, which found her guilty of criminal damaging following a bench trial. She was sentenced to 30 days in jail, which was suspended, and she was placed on supervised community control for a period of five years; Myles was ordered to pay restitution as a condition of her community control, in an amount to be determined by the probation department. For the following reasons, the judgment of the trial court will be affirmed in part, reversed in part, and remanded for a determination of the amount of restitution.

{¶ 2} Myles's brief contains a lengthy procedural history involving several cases. Insofar as it is relevant to this appeal, Myles was charged with criminal damaging following an incident at the house of her former husband, Fernando Mason. Mason and Myles have a contentious relationship. Mason is the residential parent for their son, who has serious medical conditions and requires professional medical care. On March 16, 2012, after a confrontation with Mason, Myles was alleged to have deliberately scratched the paint on the car of a home health nurse, Cynthia Ely, who was caring for the child at Mason's home. The facts will be discussed in greater detail below.

{¶ 3} On March 19, 2012, a complaint for criminal damaging was filed in the trial court. On June 20, 2012, Myles was tried to the court and found guilty. After a presentence report was prepared, Myles was sentenced as described above.

{¶ 4} Myles appeals from the trial court's judgment, raising five assignments of error.

{¶ 5} Myles's first and second assignments of error state:

THE CONVICTION OF APPELLANT FOR CRIMINAL

DAMAGING WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

THE CONVICTION OF APPELLANT FOR CRIMINAL DAMAGING WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} Myles contends that her conviction was supported by insufficient evidence because the "mechanism of damage asserted by the State," i.e., the dragging of an umbrella along the side of Ely's car while Myles drove her own vehicle past it, could not have caused the damage in question. She contends that her conviction was against the manifest weight of the evidence in that 1) the same "mechanism of damage * * * lacks any credibility" because there were two separate scratches on the car, 2) she would not have been in possession of an umbrella, because it was not a rainy day, 3) the damage to the vehicle was not properly documented, 4) Ely and Mason, who testified on behalf of the State, were clearly biased against her, and 5) it would have made no sense for Myles to scratch the vehicle because she knew that Mason had installed cameras around his home.

{¶ 7} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683

N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 8} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. See *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 9} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 10} Myles was convicted of criminal damaging, in violation of R.C. 2909.06(A)(1), which provides, in pertinent part, that no person shall knowingly cause physical harm to the property of another by any means without the other person's consent.

{¶ 11} The State's evidence at trial established the following facts:

{¶ 12} Mason and Myles are divorced and have a strained relationship. Mason is the residential parent for their son, who has serious medical needs and requires professional medical care. Pursuant to the divorce decree, Myles's weekly visitation with the child must be supervised and must occur at Erma's House.

{¶ 13} Cynthia Ely worked at Mason's home as a home health nurse, caring for the child. Ely had also cared for the child prior to the divorce, but was reassigned due to an altercation with Myles. After the divorce, Ely returned to caring for the child.

{¶ 14} According to Mason, Myles came to Mason's house on the evening of March 16, 2012, uninvited and unannounced. Mason has cameras set up around the exterior of his house which can be monitored from within, and he saw Myles approaching the house. Mason went outside to talk with Myles, who stated that she wanted to visit her son. When Mason informed Myles that he would not permit her to see the child outside of the court-ordered visitations, she "started agitating the situation." She also asked why Ely, to whom she referred using an expletive, was at the house, and Myles "went ballistic" when she learned the Ely was again caring for the child. She "stormed away" very angrily, with her teeth clenched. Myles was carrying an umbrella.

{¶ 15} When Myles got into her car, she drove very slowly along the side of Ely's car, which was parked on the street. As she did so, Myles was on the wrong side of the road, and the drivers's side doors of the cars were very close together. After she pulled

alongside Ely's car, Myles "slowed down to a creep," but did not stop. According to Mason, Myles's car window was down. Mason and Ely testified that the cars were less than one foot apart, and possibly as close as four inches, when Myles "creeped" past. After Myles left, Mason and Ely found "deep marks" in the paint on both doors on the driver's side of Ely's vehicle. Ely testified that the scratches had not been on her car earlier in the day. The State's theory of the case was the Myles had dragged the umbrella along the side of Ely's car as she passed it in her own car.

{¶ 16} Trotwood Police Officer Michelle Hudwell investigated the alleged criminal damaging the next day, March 17, because no officers had been available to respond to the call on the 16th. She testified that there were two fresh, parallel, "a little bit wavy" scratches in the paint on Ely's car on the driver's side. The height of the scratches differed by three to four inches; one "went from the driver's side door slightly onto the passenger door, maybe one or two inches," and the other one "started in the middle of the driver's door and stretched to the rear passenger door." At oral argument, Myles's counsel stated that the roughly-parallel lines overlapped three to four inches.

{¶ 17} Ely testified that she got an estimate of $1,028 to repair and paint her car.

{¶ 18} Myles testified that she had gone to Mason's house to deliver toys for her son, but Mason convinced her to save the presents for the boy's birthday, which was in a few weeks. According to Myles, she knew she would not be allowed to see her son and had not tried to see him. She also stated that she knew Mason had cameras outside his home, and she "wouldn't intentionally * * * incriminate myself" by doing anything that could be caught on camera. She denied having an umbrella in her hand and that it had been raining at any

time that day. She also denied having a problem with Ely's watching her child and stated that she had never threatened Ely.

{¶ 19} In rebuttal, Ely testified that, after a pretrial hearing in the case a few weeks earlier, when the women were each in their respective cars at a stoplight on the street, Myles had yelled at her and said she (Myles) "was going to whup [her] * * * fat ass and get [her] fat ass out of the car."

{¶ 20} The State presented sufficient evidence from which the trial court could have concluded that Myles had knowingly caused physical damage to Ely's car, without Ely's permission. Although she asserts in her brief that an umbrella could not have caused the damage in question, the State's evidence, if believed, supported a contrary conclusion. Myles's conviction for criminal damaging was supported by sufficient evidence.

{¶ 21} In her argument challenging the weight of the evidence, Myles essentially contends that the State's evidence should not have been believed. However, the credibility of the evidence was for the trial court to determine, because it heard the evidence directly.

{¶ 22} Myles contends that the testimony of Mason and Ely should not have been believed because of the contentiousness of her past relationship with them; however, her own testimony suffered from the same infirmity. Myles claims that she would not have had an umbrella because it was not a rainy day, but Mason and Ely testified that it had rained earlier in the day and that Myles had an umbrella in her hand at the door of the house. Myles asserts, without any evidence, that an umbrella could not have caused the damage in question, because there were two scratches on the doors, at different levels. Officer Hudwell testified that the scratches were three to four inches apart. Based on the evidence

presented, there was no basis to conclude that an umbrella could not have caused such marks; in fact, the trial court could have drawn a reasonable inference that an umbrella could cause such marks. And, although it may follow that one would not commit a crime in an area in which cameras are in operation, the existence of cameras in this case did not preclude a finding of guilt, based on the testimony of Mason and Ely that Myles had driven her car in a manner consistent with causing the damage to Ely's vehicle.

{¶ 23} Based on the evidence presented in this case, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice when it convicted Myles of criminal damaging.

{¶ 24} The first and second assignments of error are overruled.

{¶ 25} Myles's third assignment of error states:

TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST A JURY TRIAL AND BY FAILING TO OBJECT TO INADMISSIBLE TESTIMONY.

{¶ 26} Myles claims that her trial attorney was ineffective in failing to request a jury trial. She contends that, because the evidence was "so close, and indeed insufficient," the failure to request a jury trial "is the difference between conviction and exoneration." She also contends that allowing the judge to hear the case was "simply incomprehensible," because he (the judge) was aware of and/or had adjudicated other cases in which Myles was involved.

{¶ 27} Although Myles's statement of this assignment of error also includes a suggestion that counsel failed to object to inadmissible hearsay, her argument with respect to

this issue is contained entirely under the fourth assignment of error, and we will address it there.

{¶ 28} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his or her errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland* at 688.

{¶ 29} Myles acknowledges in her brief that this court has repeatedly held that the decision not to request a jury trial is normally viewed as a matter of trial strategy and does not constitute ineffective assistance of counsel. *See, e.g., Pierson v. Rion*, 2d Dist. Montgomery No. 23498, 2010-Ohio-1793, ¶ 28; and *Beavercreek v. Levalley*, 2d Dist. Greene No. 06-CA-51, 2007-Ohio-2105, ¶ 19. However, she contends that she "objected" to proceedings without a jury in a motion to set aside the trial court's judgment and a petition for post-conviction relief. She argues that this "objection" distinguishes this case from others in which we have found that the failure to request a jury trial was a matter of trial strategy.

{¶ 30} Myles's appeal must be decided based on the record that was before the court at the time of trial. Her post-trial motions cannot properly be characterized as timely objections to proceeding without a jury. Thus, we find her case indistinguishable from the other cases in which we have held that proceeding without a jury is a matter of trial strategy.

Moreover, we will not assume, without any evidence in support of such a claim, that a judge's involvement in or familiarity with other cases involving a defendant compromises the court's impartiality.

{¶ 31}    The third assignment of error is overruled.

{¶ 32}    Myles's fourth assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF MS. MYLES BY ALLOWING INADMISSIBLE TESTIMONY REGARDING A CHARGE THAT WAS DISMISSED.

{¶ 33}    Myles claims that the trial court erred in allowing the State to question her about a charge of menacing that was filed against her, based on an altercation between Myles and Ely after the pre-trial conference in this case; the charge was later dismissed.  Myles claims that this evidence was an improper attack on her credibility.

{¶ 34}    The relevant testimony during Myles's cross-examination was as follows:

Q:    * * * So all those things [Myles backed out of Mason's driveway, passed Ely's car, and drove to the stop sign] we can agree to.  The only thing that we disagree on is whether you scratched her car or not, is that right?

A:    Yes.

Q:    And whether you were mad?

A.    Yes.

Q:    Okay, And we would also disagree that you would never threaten Ms. Ely any harm at all, is that correct?

A:     Never.

Q:     Now, you were in court a couple weeks back, right?

A:     Yes.

Q:     And when you left here, you threatened her, didn't you?

[Defense counsel objected on the basis of relevance, noting that there had been no conviction.   The trial court sustained the objection.]

Q:     But it's your testimony that you would never make any threats toward

       Ms. Ely?

[Objection based on relevance, overruled.]

A:     No.

**{¶ 35}**   The State then called Ely on rebuttal, and Ely stated that she had been threatened by Myles after the pretrial conference.

**{¶ 36}**   Evid.R. 404 provides that character evidence is not admissible for the purpose of proving that a person acted in conformity therewith on a particular occasion. However, there are exceptions, including that evidence of other crimes, wrongs, or acts, though "not admissible to prove the character of a person in order to show action in conformity therewith, [may be] admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."   Evid.R. 404(B).

**{¶ 37}**   A trial judge has considerable discretion to determine whether the specific evidence is of such a nature that it falls within one of the other purposes under Evid.R. 404(B) for which the evidence may be admitted.   *State v. Morris*, 132 Ohio St.3d 337,

2012-Ohio-2407, 972 N.E.2d 528, ¶ 19.    Although the trial court did not expressly state its basis for overruling Myles's objection, it could have reasonably concluded that evidence of the prior altercation was admissible to prove motive (the hostility between the women), that the scratches on the car were intentionally made, that Myles planned the act, or that there had been no mistake in Myles's scratching her umbrella along the car.   The court also could have reasonably concluded that the question about Myles's threats toward Ely constituted proper impeachment of Myles's assertion, on cross-examination, that she (Myles) would never have done anything to upset or threaten Ely.   Evid.R. 607(A). Moreover, even if such evidence were not properly admitted, we would presume that the trial court, as the finder of fact, did not rely on prior bad acts in reaching its verdict. *See State v. Blakely*, 2d Dist. Montgomery No. 25120, 2012-Ohio-3841, ¶24 ("We will not presume that the trial court relied on improper evidence, when there is nothing in the record to support such a conclusion.")

{¶ 38}    The fourth assignment of error is overruled.

{¶ 39}    Myles's fifth assignment of error states:

THE TRIAL COURT ERRED BY ALLOWING HEARSAY TESTIMONY

AS TO THE REPAIR COST OF THE DAMAGE TO THE VEHICLE AND

IN RELYING ON THIS HEARSAY IN ORDERING RESTITUTION.

{¶ 40}    Myles argues that there are several problems with the court's restitution order: 1) Ely's testimony about the amount of damage to her car was inadmissible hearsay upon which the trial court could not rely in ordering restitution, 2) the trial court did not properly award restitution because it referred the determination of the amount to the

probation department, and 3) Ely was entitled to recover only the amount of her deductible, which was less than the total amount of damage to the car.

**{¶ 41}** First, we note that Myles did not object at trial to Ely's testimony about the estimate she had received on the cost of repairing the scratches in her car doors. Thus, Myles waived all but plain error. *State v. Williams*, 2d Dist. Montgomery No. 24548, 2012-Ohio-4179, ¶ 38. Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been different. *Id.*, citing *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108. Notice of plain error, therefore, "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*. Ely's evidence about the cost of the damage to her vehicle did not clearly affect the outcome of the case. Thus, we find no plain error.

**{¶ 42}** Second, Myles disputes the manner in which restitution was awarded. The sentencing entry stated that Myles was sentenced to serve 30 days in jail and fined $100 plus court costs. The jail sentence and fine were suspended, and Myles was placed on supervised community control for five years. One of the conditions of community control was "Restitution, if any, to be paid as determined by probation department."

**{¶ 43}** R.C. 2929.28 provides for financial sanctions for misdemeanor offenses. It states, in pertinent part:

> * * * If the court requires restitution, the court shall order that the restitution be made to the victim in open court or to the adult probation department that serves the jurisdiction or the clerk of the court on behalf of the victim.

If the court imposes restitution, the court shall determine the amount of restitution to be paid by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.

**{¶ 44}** In accordance with R.C. 2929.28(A)(1), the trial court was required to determine the amount of restitution to be paid by Myles. Although the court was permitted to rely on the presentence report prepared by the probation department, it was not permitted to delegate this responsibility for determining the amount of restitution to the probation department after imposition of sentence. The trial court erred in failing to determine the amount of restitution. *See, also, State v. Purnell*, 171 Ohio App.3d 446, 2006-Ohio-6160, 871 N.E.2d 613, ¶ 9 (1st Dist.); *State v. Wilson*, 1st Dist. Hamilton No. C-061000, 2007-Ohio-6339, ¶17; and *State v. Sheehan*, 12th Dist. Butler No. CA2006-10-285, 2008-Ohio-2737, ¶ 19 (analogizing the felony financial sanctions imposed under R.C. 2929.18(A)(1) to the misdemeanor financial sanctions imposed under R.C. 2929.28(A)(1)); *State v. Moore*, 7th Dist. Carroll No. 00AP0741, 2002-Ohio-5047, ¶ 14.

**{¶ 45}** R.C. 2929.28(A)(1) also provides that, "[i]f the court decides to impose restitution, the court shall hold an evidentiary hearing on restitution if the offender, victim, or survivor disputes the amount of restitution." In her third argument under this

assignment, Myles does dispute the amount of restitution on appeal. (She had no opportunity to dispute it at trial.) Myles claims that Ely was not entitled to collect more than the amount of her deductible if the insurance company paid to repair the car. The State concedes that, if the insurance company fixed the vehicle, Myles "should only be required to pay Ms. Ely's deductible. * * * If not, [Myles] should pay the full amount ordered by the court."

{¶ 46} In Myles's case, restitution was ordered as a condition of community control, and not as a part of her sentence. But the trial court should not be able to do indirectly what it is not permitted to do directly, i.e., delegate to the probation department the responsibility for determining after the imposition of sentence the amount of restitution, and, in doing so, deprive a defendant of a hearing on any disputed issue related to restitution. The trial court was required to determine the amount of restitution and, because the appropriate amount of restitution is disputed, the trial court was required to hold a hearing on this issue.

{¶ 47} The fifth assignment of error is sustained.

{¶ 48} The judgment of the trial court will be reversed with respect to its order of restitution, and the matter will be remanded for a determination of this issue by the trial court. In all other respects, the judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, P.J. and HALL, J., concur.

Copies mailed to:

Raymond J. Dundes
Dwight D. Brannon

Matthew C. Schultz
Hon. James L. Manning
Hon. William H. Wolff, Jr.,Visiting Judge