[Cite as *State v. Davis*, 2022-Ohio-2511.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|                              |     |                                         |
| ---------------------------- | --- | --------------------------------------- |
| STATE OF OHIO                | :   |                                         |
|                              | :   | Appellate Case No. 29287                |
| Plaintiff-Appellee           | :   |                                         |
|                              | :   | Trial Court Case No. 2021-CR-1587       |
| v.                           | :   |                                         |
|                              | :   | (Criminal Appeal from                   |
| JOSHUA DAVIS                 | :   | Common Pleas Court)                     |
|                              | :   |                                         |
| Defendant-Appellee           | :   |                                         |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of July, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

DANIEL F. GETTY, Atty. Reg. No. 0074341, 46 East Franklin Street, Centerville, Ohio 45459
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Joshua Davis appeals from his convictions on one count of improper handling of a firearm in a motor vehicle (Count 1) and one count of operating a vehicle under the influence (OVI) (Count 2). The court sentenced Davis to intensive supervision not to exceed to five years, including a 30-day jail term. We affirm the judgment of the trial court.

{¶ 2} On June 15, 2021, Davis was indicted on the above charges as well as an additional count of OVI (Count 3) and one count of criminal damaging or endangering (Count 4). Davis was reindicted on July 13, 2021, on Counts 1-3.

{¶ 3} After pleading not guilty, Davis filed a motion to suppress. A hearing on the motion was held on August 10, 2021. Officer Evan Stafford of the Riverside Police Department testified that, on December 31, 2020, he was working alone in uniform and in his cruiser near 2555 Rondowa Avenue, an address known by him to be the residence of Davis and Blair North. Stafford had previously interacted with Davis. Stafford testified that the police had received a citizen call about a vehicle that was driving recklessly; the description of the vehicle "approximately" matched that of a Jeep that Davis was known to drive. Stafford proceeded to the intersection of Pleasant Valley Avenue and Rondowa Avenue, where he observed "the red colored Jeep" in front of Davis's house, "spinning its tires"; Stafford also testified that Davis's vehicle had "an extremely loud exhaust." Stafford testified that, due to icy conditions on the roadway, he had been unable to stop and had to turn around at a nearby church. After he had turned around and approached the intersection of Rondowa and Pleasant Valley again, Stafford

observed that Davis "had made it down to the end of [Rondowa] at the stop sign at Broadmead."

{¶ 4} Stafford testified that, due to the icy conditions, he had been unable to initiate a traffic stop without endangering himself or other motorists; he observed the Jeep continue into the City of Dayton, westbound on Valley Street, but he did not observe the driver. Stafford notified his supervisor, Sergeant Jay Vance, about his observations of the Jeep.

{¶ 5} Stafford testified that he subsequently returned to the Rondowa address at Vance's request, after Davis had been stopped there by Vance. Stafford testified that he observed Davis outside of his Jeep, between the Jeep and his home, and that Davis was highly agitated. According to Stafford, Vance asked him to remain with Davis while Vance returned to his patrol car, and every time Davis spoke, Stafford could smell "an extremely strong odor of alcoholic beverage emanating from his person." Stafford also testified that Davis was belligerent, which in his experience was common among intoxicated suspects, and that Davis had "red, glossy, bloodshot eyes." Stafford described Davis as "very disrespectful," cursing at the officers, and continuing to "berate" them while they were attempting to do their jobs at the scene.

{¶ 6} Stafford testified that he arrested Davis and placed him in his cruiser; while being transported to the Huber Heights Emergency Room, Davis continued his volatile behavior, threatening law enforcement officers and their families. Davis also repeatedly kicked the divider between the front and back seats and the windows in the cruiser; he kicked one door so hard that it was "actually bowed and was no longer flush with the door

frame." According to Stafford, Davis also threatened to urinate in the cruiser and looked as if he was urinating in the back of the cruiser when Stafford looked at him in the rearview mirror. After Davis was removed from the cruiser, Stafford found a "yellowish liquid" puddled on the side where David had been; the liquid had not been in the cruiser prior to Davis's being placed in the car. Stafford later transported Davis from the emergency room to the county jail. He had searched Davis's person prior to placing him in the cruiser and had found no contraband.

{¶ 7} On cross-examination, Stafford was questioned about the initial dispatch, which was for reckless driving with a possible shot fired. Stafford also testified that, although he did not see the driver of the red Jeep initially, he immediately believed the driver to be Davis. Stafford stated that he had no role in the decision to tow Davis's Jeep, and that he had transported Davis from the scene before the Jeep was removed.

{¶ 8} Sergeant Jay Vance testified that, on December 31, 2020, dispatch received a couple of calls from the area of the Rondowa address, on a report of a subjects yelling and "racing their engines"; one caller also stated that the same subjects had been firing a gun off" earlier. Stafford radioed Vance about his observations in the area, and Vance was subsequently dispatched to Bushnell Avenue and Rohrer Boulevard, which is in the vicinity of the Rondowa address.

{¶ 9} Vance observed a red Jeep that was stopped in the roadway near 2555 Rondowa. The vehicle remained there while Vance circled around the block. Vance's window was down, and he heard someone yelling from the Jeep and observed an arm out the window of the Jeep, waving. Vance testified that the vehicle then turned left into

the driveway of 2555 Rondowa without signaling. Vance had been told by Stafford that Stafford believed it was Davis's red Jeep, but Vance had never pulled Davis over in his Jeep.

{¶ 10} Vance testified that he pulled behind the Jeep and activated his emergency lights when the Jeep turned into the driveway without signaling the turn. Exhibit 1, which contained cruiser camera video of the stop and Vance's body camera video, was played for the court. Vance testified that the sound in the cruiser camera video only comes on when the lights are activated, and that the system then backs up the recording for one minute: the time reflected on the December 31, 2020 recording was 1:06 a.m.

{¶ 11} Vance testified that after he pulled into the driveway, Blair North, the mother of Davis's child, parked "directly behind" his cruiser and "kind of blocked [him] in"; Davis's eight-year-old daughter was also present. Like Stafford, Vance testified that a strong odor of alcohol was emanating from Davis's person, his eyes were bloodshot and glassy, and he was extremely agitated. Vance described Davis as argumentative. Vance stated that he was concerned about being blocked in the driveway by North in case he received an emergency call; he was trying to get her to move her vehicle, but Davis was "instructing her, no, you don't have to move, this is private property." Vance stated that another adult male, "Mr. Tucker," also appeared on the scene, and Vance told him he needed to get back, but Josh was instructing Tucker to "stay right there." Vance stated that he decided to arrest Davis because David was "obstructing [his] investigation."

{¶ 12} As Exhibit 1 continued to be played, Vance recounted that Tucker was eventually placed in handcuffs. He explained that Davis had already been placed in the

back of Stafford's car, Vance was trying to complete his paperwork, and Tucker was between Vance's cruiser and Davis's Jeep. When Vance approached the Jeep, he saw a gun in plain sight on the front passenger seat. At this point, he told Tucker that he needed to leave, but Tucker was uncooperative. Vance was trying to get a camera to document what he had seen, but he explained that he could not allow Tucker to be in closer proximity to the gun than he (Vance) was, so Tucker was "secured" and charged with obstruction.

{¶ 13} Vance described the scene as "very chaotic." Davis was asked to perform field sobriety tests, but he refused to comply and was placed under arrest at that point. Vance stated that the weapon he discovered in the Jeep had been loaded and was subsequently tested and found to be operable. Vance stated that the Jeep was later towed pursuant to department policy. Vance testified that it was later determined that Davis had a valid concealed carry permit.

{¶ 14} On cross-examination, Vance testified that he believed the initial dispatch had referenced three people and multiple vehicles, but he described the dispatch as "kind of vague." He stated that the dispatch referred to multiple people revving their engines, without specifics as to the vehicles of whether the people were males or females, and that it also referenced shots having been fired earlier in the night.

{¶ 15} Vance further testified that he did not believe that Davis's waving his arm out the window and "screaming and yelling" was intended as a hand signal for a turn off the roadway. Vance testified that about the paperwork and investigation when someone is arrested for OVI, because there are "certain sanctions a vehicle is subject to if [the

driver has] so many offenses," and "it takes a little time to verify"; these factors are also relevant to whether the vehicle "is subject to tow based on previous OVIs." Vance testified that he had never previously charged Davis with an OVI offense. Vance denied that the Jeep was towed to follow up on the prior report of shots fired, pointing out that it would be difficult to determine if that vehicle had been involved "in a shots fired" by towing it.

{¶ 16} In response to questions from the court, Vance indicated that the weapon found in the Jeep was a Glock, semiautomatic firearm, with "the magazines still in it." He stated that it was readily visible from outside the Jeep and would have been discovered regardless of whether the Jeep had been towed. In response to questions from defense counsel, Vance indicated that the seats in the Jeep were black and so was the weapon, but the area was illuminated by the lights of his cruiser.

{¶ 17} On September 8, 2021, the parties reconvened for the court's decision on the motion to suppress. After reviewing the evidence from the hearing, the court stated:

> * * * Again, the Defendant would not cooperate. He was placed under arrest for obstruction, but the officer wanted to do field sobriety tests first. A female again was interfering with the officer's work, claiming it was private property. The Defendant has no right to flee the private property to avoid being detained or arrested. He was not inside. * * * There were a lot of other things going on with people attempting to interfere. The Defendant refused to do the field sobriety tests.
>
> There was a firearm located in the front passenger seat of the vehicle

that was readily observable from outside of the vehicle. * * * The Defendant claimed that he made a hand signal that he was turning, but that was not what it appeared, and a reasonable officer could have concluded that by screaming and yelling, which can be heard on the video, that it was not effort at a hand signal.

The tow of the vehicle, which was done pursuant to the Riverside tow policy, was related to the OVI and the potential forfeiture of the vehicle which is authorized by law. Again, the gun was lying on the seat of the vehicle, and the officer observed it from outside of the vehicle. Could plainly see it on the front seat. He observed the gun before it was searched. So even if the tow of the vehicle had not been authorized, the gun was in plain view.

In addition, the officers observed the Defendant committing traffic violations, that is, being parked in the roadway, as well as failing to signal which authorized the officers to encounter and stop the vehicle. But then, after that, the Defendant's ridiculous behavior resulted in him being arrested for obstruction. Again the officers have reasonable suspicion that he committed traffic violations, as well as that he committed the offense of obstruction and that he was under the influence while he had been operating a motor vehicle, and therefore, they had reasonable suspicion, as well as probable cause, for their actions.

In addition, because the gun was observed in plain view in the

vehicle, there is no violation of the Defendant's Fourth Amendment right as a result of the officers seizing that. In addition, the vehicle was going to be towed pursuant to the Riverside tow policy related to the OVI and the potential forfeiture of the vehicle, and as a result, there's no violation of any of the Defendant's Fourth Amendment rights.

Furthermore, with regard to any Fifth Amendment rights, it's my understanding that was not an issue, but questions weren't being asked of the Defendant. He was just spewing things without being asked questions, and so there's no violation of the Defendant's Fifth Amendment rights. The motion to suppress is overruled in its entirety.

{¶ 18} The court issued a written decision on September 10, 2021, based upon its oral findings. Davis then entered pleas of no contest to improper handling of a firearm in a motor vehicle and OVI. He was found guilty and sentenced as described above.

{¶ 19} Davis asserts the following assignment of error:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING DEFENDANT'S MOTION TO SUPPRESS.

{¶ 20} Davis asserts that the "only basis for reasonable suspicion to detain" him was that he was in front of his home with his hand out the window indicating his intent to make a turn. Davis argues that this characterization of the circumstances was supported by the cruiser video. Because "these were the only facts available to Officer Vance at the time of the stop," Davis contends that reasonable suspicion did not exist. He also argues that a car spinning its tires in "atrocious road conditions" does not justify a stop

and that the cruiser video did not substantiate that his exhaust system was loud. For all of these reasons, Davis asserts that Vance lacked reasonable suspicion to effectuate the stop and that all evidence obtained after the stop was fruit of the poisonous tree and should have been excluded at trial.

{¶ 21} The State responds that Vance's testimony and the cruiser camera footage presented at the suppression hearing supported the trial court's conclusion that Davis committed both a turn signal violation and moving violation, and thus that the subsequent traffic stop was constitutionally valid. The State argues that because the officers had both a reasonable suspicion of criminal activity and probable cause to stop the vehicle, the stop was not unlawful, and the exclusionary rule and "fruit of the poisonous tree" doctrine did not apply.

{¶ 22} When reviewing a motion to suppress, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Millerton*, 2015-Ohio-34, 26 N.E.3d 317, ¶ 11-12 (2d Dist.), citing *State v. Love*, 2d Dist. Montgomery No. 23902, 2011-Ohio-1287. In ruling on a motion to suppress, "the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *Id.*, citing *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1973). The credibility of the evidence is for the trial court to determine, because it heard the evidence directly. *Id.*, citing *State v. Olson,* 2d Dist. Montgomery No. 25452, 2013-Ohio-4403, ¶ 11, citing *State v. Myles,* 2d Dist. Montgomery No. 25297, 2013-Ohio-2227, ¶ 21.

{¶ 23} "Accepting the findings of fact of the trial court as true, we must independently determine as a matter of law, whether the facts meet the appropriate legal standard." *Id.*, citing *Love* at ¶ 19; *see also State v. Mobley,* 2d Dist. Montgomery No. 26044, 2014-Ohio-4410, ¶ 11; *State v. Shipp*, 2d Dist. Montgomery No. 24933, 2012-Ohio-6189, ¶ 11; *State v. Morgan*, 2d Dist. Montgomery No. 18985, 2002-Ohio-268.

{¶ 24} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops. *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 11, citing *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and *Dayton v. Erickson,* 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996).

{¶ 25} "A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic or equipment violation or if the police officer has a reasonable, articulable suspicion that a traffic or equipment violation has occurred or is occurring. *Erickson* at 11; *State v. Finfrock*, 2d Dist. Montgomery No. 28406, 2020-Ohio-1142, ¶ 12. As noted by the Ohio Supreme Court:

Probable cause is certainly a complete justification for a traffic stop, but we have not held that probable cause is required. Probable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable

cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop.

*State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 849 N.E.2d 1204, ¶ 23.

{¶ 26} As noted by the Fourth District:

> * * * "[T]he question whether a traffic stop violates the Fourth Amendment * * * requires an objective assessment of a police officer's actions in light of the facts and circumstances." *Bowling Green* at ¶ 14. "[T]he existence of probable cause [or reasonable suspicion] depends on whether an objectively reasonable police officer would believe that [the driver]'s conduct * * * constituted a traffic violation, based on the totality of the circumstances known to the officer at the time of the stop." *Id.* at ¶ 16.

*State v. Taylor*, 2016-Ohio-1231, 62 N.E.3d 591, ¶ 19 (4th Dist.).

{¶ 27} Finally, as this Court has noted:

> Under the plain view doctrine, a warrantless seizure of incriminating evidence is permissible where "(1) the officers are lawfully positioned in a place from which the object can be plainly viewed, (2) the incriminating character of the object is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *State v. Goode*, 2d Dist. Montgomery No. 25175, 2013-Ohio-958, ¶ 26, citing *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) and *Horton v. California*, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

*State v. Garrett*, 2018-Ohio-4530, 123 N.E.3d 327 (2d Dist.), ¶ 22.

{¶ 28} We have viewed State's Exhibit 1, and it is consistent with Vance's testimony regarding the stop of Davis's Jeep. The icy road conditions were reflected in the cruiser camera video, and Davis's Jeep was clearly stopped in the middle of the roadway, blocking the way, as Vance approached from behind. This was after Vance observed the Jeep stopped in the roadway prior to circling the block. Davis's waving arm was visible in the video, and we agree with the trial court that it did not appear that Davis was signaling a turn. Davis cannot be heard yelling from inside the Jeep because the audio was not activated until Vance activated his overhead lights, but Vance immediately advised Davis that he had initiated the stop because Davis was parked in the middle of the road and "screaming." Davis's belligerent attitude was apparent in the video, as he obstructed the officers' investigation by yelling at them as well demanding that North and Turner act in defiance of the officers' instructions. Davis also threatened to spit on the officers. Vance repeatedly advised Davis of his strong odor of alcohol and Vance's intent to conduct field sobriety tests, but Davis refused to cooperate. He can be heard in the body camera video refusing the take a chemical test for OVI.

{¶ 29} We conclude that an objectively reasonable officer would have believed that Davis had committed traffic violations, namely parking in the roadway and failing to signal a turn. Under the totality of the circumstances, Vance, who had been advised about Stafford's earlier observations of Davis after the citizen calls, had probable cause and reasonable suspicion to execute the traffic stop. R.C. 4511.39(A) provides: "When required, a signal of intention to turn or move right or left shall be given continuously

during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning, * * *." R.C. 4511.22(A) provides: "No person shall stop or operate a vehicle, trackless trolley, or street car at such an unreasonably slow speed as to impede or block the normal and reasonable movement of traffic, except when stopping or reduced speed is necessary for safe operation or to comply with law." The officers determined-- and the videos support the conclusion -- that Davis was intoxicated. In the course of the officers' investigation, and in preparing for the Jeep to be towed pursuant to Riverside policy, the gun was found in plain view. It was visible in the body camera video in the middle of the passenger seat as described by Vance.

{¶ 30} For the foregoing reasons, Davis's assignment of error is overruled.

{¶ 31} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Daniel F. Getty
Hon. Mary Katherine Huffman