[Cite as *State v. Goode*, 2013-Ohio-958.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                               :

    Plaintiff-Appellee               :           C.A. CASE NO.    25175

v.                                          :           T.C. NO.    09CR2389/3

KYREE GOODE                                 :           (Criminal appeal from
                                                        Common Pleas Court)

    Defendant-Appellant              :

                                            :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the    15th    day of     March    , 2013.

· · · · · · · · · ·

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. No. 0012093, 4428 N. Dixie Drive, Dayton, Ohio 45414
        Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

      **{¶ 1}** After the trial court overruled in part his motion to suppress, Kyree Goode pled no contest to possession of crack cocaine in an amount of 10 grams or more but

less than 25 grams, a second-degree felony. The trial court sentenced him to a mandatory term of four years in prison, suspended his driver's license for six months, imposed a mandatory fine of $10,000, and ordered him to pay court costs. Goode appeals from his conviction, claiming that the trial court erred in denying his motion to suppress the drugs. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} When ruling on a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). In reviewing a trial court's decision on the motion to suppress, an appellate court must accept the trial court's findings of fact as true, if they are supported by competent, credible evidence. *State v. Burnside*, 110 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The appellate court must then determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

{¶ 3} The evidence from the suppression hearing revealed the following facts.

{¶ 4} At approximately 3:45 a.m. on July 23, 2009, Dayton Police Officer Mark Orick was on patrol in uniform and in a marked cruiser at a large apartment complex when he observed a woman, Danielle Jones, with whom he had come into contact a couple of weeks earlier (when he arrested Jones's husband, Shawn). Due to the late hour, Orick stopped to observe her while she talked to another woman.

{¶ 5} After three or four minutes, Officer Orick exited his cruiser and approached Jones, who was standing about seven feet from the rear door of 805 Danner. (The rear door

faced a cul-du-sac, where people regularly parked.) Jones immediately recognized the officer. While Officer Orick and Jones were speaking, the rear door to 805 Danner opened, and Orick witnessed Shawn Jones step backward out of the residence and engage in a hand-to-hand drug transaction with a man in the apartment. After the transaction concluded, the officer secured Shawn Jones in handcuffs, retrieved suspected crack cocaine from his hand, and radioed for back-up. Another officer arrived "within seconds" and took custody of the Joneses. Other officers arrived to assist Orick with making contact with the other person involved in the drug transaction, who was later identified as Lloyd Kelley.

{¶ 6} Officer Orick knocked on the rear door of 805 Danner and announced himself. Kelley answered the door. Orick positioned himself between the open screen door and the threshold and told Kelley that he had observed him engage in a drug transaction. From the doorway, Orick could see several items of contraband inside the apartment, including two digital scales, baggies that were commonly used to transport drugs, and what appeared to be crack cocaine on the kitchen table. Orick testified that, because he was witnessing "a felony in progress," he decided to enter the home. Once inside, he observed another digital scale with cocaine residue on a dining room table.

{¶ 7} Officer Orick saw two small children asleep on a fold-out couch, and he asked Kelley if anyone else were in the apartment. Kelley replied that his wife, sons, and two others were upstairs. Orick and other officers then conducted a "protective sweep." When Orick and another officer, Officer Meehan, went upstairs, two bedroom doors were open and one was closed and locked from the inside. Officer Meehan escorted the individuals from the two open rooms downstairs.

**{¶ 8}** After Officer Meehan returned, Officer Orick knocked on the locked door. It was opened by a woman. Orick saw a man, later identified as Goode, asleep in the room. While attempting to wake Goode, Orick saw a large baggie of what appeared to be crack cocaine in front of a television on a television stand in the room. When Goode was awake, Orick asked him if anyone else was in the room. Goode responded, "No, that's why I keep the door locked." The officers took Goode and the woman downstairs.

**{¶ 9}** At their sergeant's direction, Officers Orick and Meehan returned upstairs with Goode and the others who had been upstairs, one at a time, so they could identify which room they had been in. When Goode went up, he told the officers that he had come out of one of the rooms that had been open. He was then taken back downstairs. Afterward, again at their sergeant's direction, Officers Orick and Meehan searched upstairs for more drug paraphernalia and/or weapons. Orick secured the crack cocaine that he had observed in Goode's room. The officers also searched Goode's mattress, which was on the floor, and found approximately $1591 in cash underneath.

**{¶ 10}** Goode was ultimately arrested and placed in a cruiser. When he was patted down, the officers found an additional $500 in cash. Goode was informed of his *Miranda* rights; he did not make any statements following his arrest.

**{¶ 11}** Goode was charged with possession of crack cocaine, and he moved to suppress the evidence recovered from the residence and any statements he had made. After a hearing, the trial court suppressed the money located under the mattress, but otherwise overruled the motion. The court concluded that officers lawfully entered the residence due to the "felony in progress," that the officers were justified in conducting a protective sweep

of the residence, and that the protective sweep "revealed the baggy of crack cocaine in Defendant's room in plain sight." The court further found that the statements Goode made prior to being informed of his *Miranda* rights were "investigatory in nature and not subject to *Miranda*."[1]

{¶ 12} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Pressley*, 2d Dist. Montgomery No. 24852, 2012-Ohio-4083, ¶ 18. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment was directed." (Citation omitted.) *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. *Id.* at 586. However, exigent circumstances are a well-established exception to the Fourth Amendment's warrant requirement. *State v. Berry*, 167 Ohio App.3d 206, 2006-Ohio-3035, 854 N.E.2d 558, ¶ 12 (2d Dist.). The State has the burden of showing the validity of a warrantless search. *State v. Hilton*, 2d Dist. Champaign No. 08-CA-18, 2009-Ohio-5744, ¶ 21-22, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).

{¶ 13} The exigent or emergency circumstances exception to the warrant requirement applies in a variety of situations, including when entry into a building is necessary to protect or preserve life, to prevent physical harm to persons or property, or to prevent the concealment or destruction of evidence, or when officers are in "hot pursuit" of a

---

[1] On appeal, Goode does not argue that the trial court erred in denying his motion to suppress his statements.

fleeing suspect or someone inside poses a danger to the police officer's safety. *E.g.*, *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960, ¶ 48 (2d Dist.); *Kentucky v. King*, – U.S. –, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011). "In order to justify an exception to the warrant requirement, the costs involved in obtaining a warrant must be sufficiently significant to justify avoiding the delay inherent in procuring a warrant." *Sharpe* at ¶ 29; *see King* at 1858 ("[W]arrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement.").

{¶ 14} In the present case, Officer Orick testified that there was a cul-du-sac behind the apartments along Danner, and he approached Jones, who was standing near the rear door to 805 Danner. After Jones's husband came out of the rear door of that apartment and was arrested, Officer Orick knocked on the back door of 805 Danner (which appeared to be a common entry point for visitors to the residence) and announced himself. When Kelley opened the rear door, Officer Orick could see, from the threshold outside the residence, several items of contraband, including two digital scales, baggies, and what appeared to be crack cocaine.

{¶ 15} At the suppression hearing, Officer Orick initially testified that he entered the apartment due to a "felony in progress." On cross-examination, he stated: "Based on my eyewitness account of seeing him [Kelley] do a hand-to-hand drug transaction, knowing that I had the crack cocaine in my pocket that I secured off the person that he's – just gave it to – then, yes, then I made entrance into the apartment." The trial court found that the "felony in progress" was a sufficient justification for the officer's entry. We disagree that there is a

"felony in progress" exception to the warrant requirement.

{¶ 16} In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court held that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's house in order to make a routine felony arrest. *See also Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). At the time of Orick's entry into 805 Danner, the hand-to-hand drug transaction between Shawn Jones and Lloyd Kelley was completed and Kelley was in his apartment. The only apparent felony in progress was the possession of drugs and drug paraphernalia inside the apartment.

{¶ 17} It is true that the existence of a felony in progress within a home may involve circumstances that provide the exigency required to justify an officer's warrantless entry into the home. Where the particular felony creates an immediate need for an officer to enter the home for the protection of property or persons who may be inside, we have found the officer's entry to be lawful. *E.g.*, *State v. Goodwin*, 2d Dist. Montgomery No. 23800, 2010-Ohio-6480 (exigent circumstances warranted entry into home where officers were dispatched due to a report of a burglary in progress). We emphasize, however, that the mere existence of a "felony in progress" does not justify the warrantless entry; not every felony demands urgent police entry into a home. For example, an officer's observation that a home contains marijuana may create probable cause that a felony is in progress, but it might not necessarily create an urgent need to enter the home without a search or arrest warrant. *State v. Alihassan*, 10th Dist. Franklin No. 11AP-578, 2012-Ohio-825, ¶ 23 (the observance of marijuana and a grinder within a residence, alone, did not justify the police officer's

warrantless entry). *See also, e.g.*, *Horton v. California*, 496 U.S. 128, 137, fn.7, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Morgan*, 743 F.2d 1158, 1167 (6th Cir.1984) (warrantless entry into a private home is not justified by plain view doctrine "merely because an item of contraband has become visible to those outside"). A warrantless entry due to a felony in progress is only permitted where the particular circumstances of the felony demonstrate the existence of an exigent or emergency circumstance.

{¶ 18} On appeal, the State argues that Officer Orick was justified in entering the home to prevent the drugs from being lost or destroyed. "[A] warrantless entry to prevent the destruction of evidence is justified if the government demonstrates: '(1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order.'" *State v. Enyart*, 10th Dist. Franklin Nos. 08AP-184 & 08AP-318, 2010-Ohio-5623, ¶ 21, quoting *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir.2000). We agree with the State that Officer Orick could have reasonably entered the residence to prevent the destruction or loss of the crack cocaine on the table inside.

{¶ 19} Just prior to approaching 805 Danner, Officer Orick witnessed Shawn Jones hand money to Kelley and Kelley give him a baggie with what appeared to be crack cocaine. When Kelley opened the door in response to the officer's knock, the officer advised him that he had just observed Kelley do a hand-to-hand drug transaction. Kelley denied the allegation, but Orick responded that it was Kelley he had seen. At that time, Kelley knew that the police were aware of his drug trafficking activity. And, the officer could have

reasonably believed that, if he waited to get a search warrant, Kelley would attempt to destroy the drugs in the residence, rather than allow them to be seized by the police.

{¶ 20} Prior to *King*, we held that the police may not act on an exigency that they created. *E.g.*, *State v. Johnson*, 187 Ohio App.3d 322, 2010-Ohio-1790, 931 N.E.2d 1162, ¶ 14 (2d Dist.) ("police cannot by their own conduct create an exigency by announcing their presence and then enter a private premises without a warrant under the rubric of exigent circumstances in order to prevent destruction of evidence inside"). However, where "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *King*, – U.S. –, 131 S.Ct. 1849, 1858, 179 L.Ed.2d 865 (2011). *See State v. Hancock*, 2d Dist. Montgomery No. 24654, 2012-Ohio-1436, ¶ 13 (rejecting, on the authority of *King*, defendant's argument that exigent circumstances did not justify a warrantless entry into the home because police created the exigency).

{¶ 21} Here, Officer Orick acted lawfully when he knocked on the rear door of 805 Danner in order to talk with Kelley and investigate the drug transaction he had witnessed. *See King* at 1862 ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak."). Officer Orick was unaware that there were additional drugs inside the home until Kelley opened the door to the apartment, revealing the crack cocaine inside. The fact that the officer's action might reasonably lead those inside to destroy the drugs does not render the officer's entry to

prevent the drugs' destruction unconstitutional.

{¶ 22}  Goode next argues that the officers did not properly conduct a protective sweep of the residence.  A "protective sweep" is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others.  It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *State v. Hunter*, 2d Dist. Montgomery No. 24350, 2011-Ohio-6321, ¶ 33.   The United States Supreme Court explained that "as incident to the arrest, the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."  *Buie* at 334.  In order for the officers to conduct a "protective sweep" beyond that area, the officers must have "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."  *Id*.

{¶ 23}   "By adopting the 'reasonable and articulable suspicion' standard of *Terry* and *Long*, the Supreme Court in *Buie* imposed a circumstantial predicate on the authority conferred on law enforcement officers to conduct a protective sweep of a defendant's residence following his arrest.  There must be articulable facts from which police reasonably suspect that the premises in which defendant is arrested harbors another person or persons who may launch an attack on the officers who are there.  Absent that basis to act, a protective sweep is an unreasonable search for purposes of the Fourth Amendment, and any

incriminating evidence it produces must be suppressed." *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960 ¶ 37 (2d Dist.), quoted by *State v. Young*, 2d Dist. Montgomery No. 24537, 2011-Ohio-4875, ¶ 19.

**{¶ 24}** Officer Orick entered 805 Danner at 3:45 a.m. shortly after witnessing a drug transaction at the doorway to that apartment. Prior to entering, he saw additional crack cocaine, baggies, and digital scales in the apartment. As soon as he walked through the back door, he observed additional drugs and drug paraphernalia, and he saw two small children sleeping on a couch. The officer was told by Kelley that his two sons, wife, and "another girl and a guy" were upstairs. The officer then decided to conduct a protective sweep.

**{¶ 25}** The officer explained at the suppression hearing:

[O]nce we were told that we already knew there were people upstairs, we would never just ignore the upstairs because we don't know who's upstairs. We don't know if they're armed, we've obviously seen drugs in the house. And typically, nine times out of ten, when there's drugs, there's weapons. So that's for our safety to ensure that the house is completely empty so that we know the only people in the house are who we're dealing with and police officers.

Given that the officer had just witnessed a drug transaction occur at the residence, that he saw drugs in multiple rooms in the house, and that he was informed that other adults were present upstairs, we conclude that Officer Orick acted in a reasonably prudent manner when he and other officers conducted a protective sweep of the home to ensure that none of the

other individuals inside would pose a danger to them. *See, e.g., State v. Smith*, 5th Dist. Stark No. 2011 CA 140, 2011-Ohio-6872.

{¶ 26} Upon entering Goode's room to wake him and have him come downstairs, Officer Orick observed crack cocaine sitting on the television stand in front of the television. Under the plain view doctrine, a warrantless seizure of incriminating evidence, such as the crack cocaine, is permissible where (1) the officers are lawfully positioned in a place from which the object can be plainly viewed, (2) the incriminating character of the object is immediately apparent, and (3) the officer has a lawful right of access to the object itself. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Horton v. California*, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Officer Orick lawfully seized the crack cocaine on the television stand under the plain view doctrine.

{¶ 27} The assignment of error is overruled.

{¶ 28} The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Michele D. Phipps
J. Allen Wilmes
Hon. Barbara P. Gorman