[Cite as *State v. Garrett*, 2018-Ohio-4530.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27630 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-3738 |
| | : | |
| THOMAS E. GARRETT | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of November, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 West Monument Avenue, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Thomas E. Garrett, appeals from his conviction in the Montgomery County Court of Common Pleas after he pled no contest to possession of cocaine. In support of his appeal, Garrett contends the trial court erred in overruling his motion to suppress the drug evidence, because the investigating officers discovered the drug evidence as a result of an illegal search and seizure. For the reasons outlined below, the judgment of the trial court will be affirmed in part, reversed in part, and remanded for further proceedings.

**Facts and Course of Proceedings**

{¶ 2} On December 28, 2016, the Montgomery County Grand Jury returned a two-count indictment charging Garrett with possession of cocaine in an amount less than five grams and trafficking cocaine in an amount less than five grams, both felonies of the fifth degree. The charges arose after police officers recovered crack cocaine from an apartment occupied by Garrett and from Garrett's person.

{¶ 3} Garrett initially pled not guilty to the charges and filed a motion to suppress. In the motion to suppress, Garrett argued that the officers discovered the drug evidence at issue by illegally searching the apartment he was occupying and his person. On February 10, 2017, the trial court held a hearing on the motion to suppress.

{¶ 4} At the suppression hearing, the State presented testimony from Officer Jonathan Miniard of the Dayton Police Department. Miniard testified that he was part of the Greater Dayton Premier Task Force, which assists with drug complaints throughout Dayton. According to Miniard, the task force primarily responds to complaints involving

Greater Dayton Premier Properties, a subsidized housing provider. Miniard testified that the head of security at Greater Dayton Premier Management, Jim Goodwill, notified him of drug complaints at the Hilltop Apartment Complex, which is part of Greater Dayton Premier Properties. The complaints were that two males, one of whom had the last name of Shaw, were selling drugs out of an apartment located at 607 Groveland Avenue.

{¶ 5} After receiving the complaints, Miniard testified that he investigated the matter by looking at Hilltop's resident list, which listed an individual by the name of Jenkins as the resident of 607 Groveland Avenue. Miniard also used an online system to research the name Shaw. In doing so, Miniard pulled a photograph of an individual named Rodney Shaw, who had an outstanding warrant for his arrest and was rumored to be located in the area in question.

{¶ 6} Following this research, Miniard testified that on November 23, 2016, he and Officer Halloway were driving by 607 Groveland Avenue when they noticed that the front door to the apartment was open. Miniard testified that he had gone to the apartment earlier in the week to speak with the resident regarding the drug complaints, but no one was home. Since he saw the front door was open, Miniard testified that he and Halloway decided to stop and see if they could make contact with the resident.

{¶ 7} Before making contact, Miniard testified that he called Officer Rose to assist at the scene. After Rose arrived, Miniard and Rose approached the front of the residence while Halloway went to the back. Miniard testified that the main door to the apartment was half-way open and that the screen door was closed. Miniard claimed that Rose knocked on the screen door, which prompted an occupant inside the residence, later identified as Garrett, to approach the doorway and fully open the main door to the

apartment. During this time, another occupant stood up in the living room to see what was going on. Miniard testified that Rose then opened the screen door to communicate with Garrett. Miniard testified that when Rose opened the screen door he did not step into the apartment, but stayed at the threshold.

{¶ 8} Continuing, Miniard testified that when he and Rose made contact with Garrett, Garrett advised that the resident, Jenkins, was not at home. Garrett also told the officers that he lived at the apartment, which Miniard testified was a violation of Greater Dayton Premier Properties' rules since Jenkins was the only resident named on the lease. Miniard also testified that he immediately noticed a strong odor of marijuana emanating from inside the residence, which was also a violation of property rules. According to Miniard, both of these violations were grounds for being trespassed and evicted from the property.

{¶ 9} While communicating with Garrett outside the threshold of the apartment, Officer Rose asked Garrett to step aside and for the other occupant to come forward. When the other occupant came forward, Miniard testified that he realized the occupant was Shaw, the individual with the outstanding warrant for his arrest. When Garrett stepped aside, Miniard also testified that he saw a scale and a plastic baggie containing a white, rock-like substance sitting atop some junk mail on a large, plastic storage bin that was located in the living room of the apartment. Miniard testified that the plastic storage bin was only five feet from the front door. Miniard further testified that the white, rock-like substance appeared to be crack cocaine. Thereafter, the officers entered the residence to effectuate the arrest of Shaw and to collect the drug evidence observed in plain view in the living room.

{¶ 10} Before placing Shaw under arrest, Miniard testified that he conducted a pat-down search on Shaw, which yielded marijuana. Meanwhile, Rose conducted a pat-down search on Garrett, which also yielded marijuana. Rose then handed Garrett off to Officer Halloway, who conducted his own pat-down search on Garrett, which yielded crack cocaine. Following both pat-down searches, Halloway placed Garrett under arrest and escorted him to a police cruiser.

{¶ 11} Once Garrett and Shaw were arrested, Miniard testified that Halloway collected the drugs and drug paraphernalia that were observed in the apartment. At this time, Jenkins, the resident of the apartment, arrived at the scene and advised the officers that he had given Garrett permission to reside there.

{¶ 12} Following Miniard's testimony, the trial court took the matter under advisement and issued a decision overruling Garrett's motion to suppress. Based on the aforementioned facts, the trial court found that the search and entry into the apartment were lawful under the plain view exception to the warrant requirement and that the officers were justified in conducting both pat-down searches on Garrett.

{¶ 13} In light of the trial court's decision overruling his motion to suppress, Garrett entered a plea agreement with the State whereby he agreed to plead no contest to possession of cocaine in exchange for the dismissal of the trafficking cocaine charge. The trial court accepted Garrett's no contest plea and found him guilty of possessing cocaine. The trial court then sentenced Garrett to a period of community control sanctions not to exceed five years.

{¶ 14} Garrett now appeals from his conviction, raising a single assignment of error for review.

**Assignment of Error**

{¶ 15} Garrett's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN DENYING MR. GARRETT'S MOTION TO SUPPRESS.

{¶ 16} Under his sole assignment of error, Garrett contends the trial court should have granted his motion to suppress because Officers Rose and Miniard violated his Fourth Amendment rights when they opened the screen door to the apartment in question and entered the apartment without a search warrant. Garrett also contends his Fourth Amendment rights were violated when the officers patted him down multiple times without a reasonable, individualized suspicion that he was armed and dangerous.

*Standard of Review*

{¶ 17} "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30, quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). "Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* " 'Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id.*, quoting *Retherford* at 592.

*Opening the Screen Door and Entering the Apartment*

{¶ 18} As previously noted, Garrett contends his Fourth Amendment rights were violated when the officers opened the screen door to the apartment in question and entered the apartment without a search warrant. The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 476, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). " '[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.' " *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 78, quoting *Payton* at 603.

{¶ 19} Although Officers Rose and Miniard had an arrest warrant for an individual inside the apartment, Shaw, Garrett maintains that Shaw was not residing at the apartment. As a result, Garrett claims the officers' act of opening the screen door and entering the apartment of a third party not named in the arrest warrant was unlawful. In support of this claim, Garrett relies on the holding in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).

{¶ 20} *"Steagald* addressed the rights of a third party, not named in the arrest warrant, to be free from an unreasonable search and seizure in his home, and held that this right is not accorded adequate protection by the issuance of an arrest warrant for the

person named in the warrant." *State v. Pembaur*, 9 Ohio St.3d 136, 137-138, 459 N.E.2d 217. "Hence, *Steagald* represents the proposition that, absent consent or exigent circumstances, a search warrant must be obtained in order to seek out the subject of an arrest warrant on the property of a third party." *Id.* at 219. In other words, "*Steagald* rejected use of the arrest warrant, which was valid, as an exigent circumstance justifying the warrantless search of the premises that produced contraband forming the basis of criminal charges against the homeowner." *State v. Pinson*, 2d Dist. Montgomery No. 20927, 2005-Ohio-4532, ¶ 20.

{¶ 21} The State concedes that, pursuant to *Steagald*, had the officers entered the apartment solely for the purpose of effectuating Shaw's arrest warrant, Garrett's Fourth Amendment rights would have been violated because Garrett had a reasonable expectation of privacy in the apartment as an overnight guest of the resident. *See Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). However, the State maintains that the officers did not enter the apartment solely for the purpose of arresting Shaw, but also for the purpose of seizing drug evidence that the officers lawfully discovered in plain view.

{¶ 22} Under the plain view doctrine, a warrantless seizure of incriminating evidence is permissible where "(1) the officers are lawfully positioned in a place from which the object can be plainly viewed, (2) the incriminating character of the object is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *State v. Goode*, 2d Dist. Montgomery No. 25175, 2013-Ohio-958, ¶ 26, citing *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S .Ct. 2130, 124 L.Ed.2d 334 (1993) and *Horton v. California*, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

{¶ 23} Under the first prong, "[t]he plain-view exception permits a law enforcement officer to seize clearly incriminating contraband only when it is discovered in a place where the officer has a right to be." (Citation omitted.) *State v. Alihassan*, 10th Dist. Franklin No. 11AP-578, 2012-Ohio-825, ¶ 20. Garrett concedes that the officers had a right to be at the doorway of the apartment and to knock on the screen door without a search warrant. *See Florida v. Jardines*, 569 U.S. 1, 8, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). Garrett also concedes that the officers were standing outside the doorway when they observed the drug evidence in plain view. Nevertheless, Garrett contends that because the officers opened the screen door to the apartment before observing the drug evidence, the officers were not lawfully positioned in a place where they had a right to be.

{¶ 24} In support of this claim, Garrett relies on *United States v. Arellano-Ochoa*, 461 F.3d 1142 (9th Cir.2006), which held that "[w]here the screen door is the only barrier between the inside of the house and the outside, the police cannot open the screen door without consent or some exception." *Id.* at 1145. In *Arellano-Ochoa*, a Border Patrol agent knocked on the screen door of the defendant's residence and, in response, the defendant swung the inner solid door to the residence almost shut, dodged quickly out of sight, and shut his blinds. *Id.* at 1144. In light of these actions, the Border Patrol agent immediately opened the screen door, pushed the inner door open, and entered the residence. *Id.* Although the court in *Arellano-Ochoa* ultimately found that exigent circumstances justified the warrantless entry into the residence, the court nevertheless held that "[w]here the solid door is open so that the screen door is all that protects the privacy of the residents, opening the screen door infringes upon a reasonable and legitimate expectation of privacy." *Id.* at 1145.

{¶ 25} The holding in *Arellano-Ochoa* is not binding on this court and has been contradicted by other federal and state courts. *See United States v. Walker*, 474 F.3d 1249, 1253 (10th Cir.2007) ("opening the storm door to knock on the inner door, even though the inner door was partially open, was not a Fourth Amendment intrusion because such action does not violate an occupant's reasonable expectation of privacy"); *Christian v. State*, 172 Md.App. 212, 222, 914 A.2d 151 (2007) ("appellant had no reasonable expectation of privacy in the space between the screen door and the solid entry door of the rowhouse").

{¶ 26} This court's decision in *State v. Johnson*, 187 Ohio App.3d 322, 2010-Ohio-1790, 931 N.E.2d 1162 (2d Dist.) also does not support the holding in *Arellano-Ochoa*. In *Johnson,* an officer approached the front door of a residence where the screen door was closed but the front door was open, allowing the officer to see the occupants inside and to observe characteristics of a "boot joint." *Id.* at ¶ 5, 15. The officer pulled open the screen door and, while standing in the doorway, the officer asked the occupants whether the residence was a "boot joint," to which the defendant responded "yes." *Id.* at ¶ 5. At that point in time, the officer entered the apartment and proceeded toward the defendant, who reached into his pocket and threw gel caps of heroin on the ground. *Id.*

{¶ 27} In affirming the suppression of the drug evidence in *Johnson*, we held that "the doorway of the apartment *into which [the officer] stepped after he opened the screen door* is an area within the curtilage of that premises, to which the protections of the Fourth Amendment extend." (Emphasis added.) *Id.* at ¶ 16. We further explained "that an officer's conduct in opening the door of an apartment *and stepping into and standing in the door*, in and of itself and absent a warrant, constitutes an unlawful entry in violation of

the Fourth Amendment." (Emphasis added.) *Id.* Accordingly, we found the officer's "conduct in opening the screen door of the apartment *and stepping into the open doorway* to present himself to those inside constituted an unlawful warrantless entry onto those premises." (Emphasis added.) *Id.* at ¶ 17.

{¶ 28} Unlike *Arellano-Ochoa*, this court's decision in *Johnson* indicates that a Fourth Amendment violation occurs when an officer enters a residence after opening the screen door, not just by opening the screen door to communicate with the individuals inside. That said, we are not proposing that a police officer is always free to open a screen door to a residence without fear of violating the Fourth Amendment. Rather, we hold that whether a Fourth Amendment violation occurs by opening a screen door depends on the specific facts and circumstances of each case. As a result, we decline Garrett's invitation to follow the restrictive holding in *Arellano-Ochoa*.

{¶ 29} In contrast to the evasive encounter in *Arellano-Ochoa*, here Officer Rose knocked on the screen door and then opened the screen door to communicate with Garrett after Garrett had already approached the doorway and fully opened the inner main door to the apartment. Thereafter, the officers saw the drug evidence in plain view in the living room when Garrett was asked to step aside. The officers were not inside the apartment when they observed the drug evidence, but outside the doorway communicating with Garrett, who voluntarily came to the door to speak to the officers. Under these facts, we find the officers were lawfully positioned in a place from which they could view the drug evidence at issue. Accordingly, the first prong of the plain view analysis is satisfied.

{¶ 30} Under the second prong of the plain view analysis, it must be determined

whether the incriminating nature of the evidence observed by the officers was immediately apparent. "An object's incriminating nature is immediately apparent when a police officer has probable cause to believe the item is associated with criminal activity." *State v. Bales*, 2d Dist. Montgomery No. 24897, 2012-Ohio-4968, ¶ 25, citing *State v. Halczyszak*, 25 Ohio St.3d 301, 304, 496 N.E.2d 925 (1986) and *Texas v. Brown*, 460 U.S. 730, 741-742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). "The criminal character of an object may be immediately apparent because of the nature of the article and the circumstances in which it is discovered." *State v. Olden*, 2d Dist. Montgomery No. 23137, 2010-Ohio-215, ¶ 29, citing *State v. Dunson*, 2d Dist. Montgomery No. 22219, 2007-Ohio-6681, ¶ 24. " 'In that situation, the totality of those circumstances, including the officer's experience and explanation, must be sufficient to present probable cause to believe that the identity of the object * * * is specific to criminal activity.' " *Id.*, quoting *Dunson* at ¶ 24. *See also Halczyszak* at 304 ("[i]n ascertaining the required probable cause to satisfy the 'immediately apparent' requirement, police officers may rely on their specialized knowledge, training and experience").

{¶ 31} As an officer assigned to the Greater Dayton Premier Task Force, Officer Miniard testified that he assisted in drug complaints throughout Dayton and that he had recovered a lot of drugs and firearms in the area of the apartment complex at issue. Miniard, a Dayton police officer of 17 years, also testified that he had served as a narcotics detective and as a motor officer who performed drug interdictions on highways. From his experience, we find that Miniard was able to readily recognize and identify the drug evidence at issue, as he testified that the white rock-like substance he observed appeared to be crack cocaine.

{¶ 32} In addition to Officer Miniard's experience, the totality of the circumstances also indicates that the criminal character of the drug evidence was immediately apparent. Specifically, Miniard testified that the apartment was in a high-crime area where a lot of drugs were recovered. Miniard also testified that his department received multiple complaints about drugs being sold out of the apartment in question. In addition, Miniard testified that he smelled the odor of marijuana emanating from the apartment when he approached the doorway. Under these circumstances and based on Miniard's police experience, we find that Miniard had probable cause to believe that the scale, plastic baggies, and white rock-like substance observed in the living room were associated with criminal activity, thus satisfying the immediately-apparent requirement of the plain view analysis.

{¶ 33} The last prong of the plain view analysis requires this court to determine whether the officers had a lawful right of access to the evidence discovered in plain view. "The [evidence], therefore, must be seized pursuant to a warrant or the seizure must be under circumstances that excuse the failure to get the warrant." *State v. Kesler*, 111 Ohio App.3d 98, 100, 675 N.E.2d 875 (3d Dist.1996), citing *Horton*, 496 U.S. at 138, 110 S.Ct. 2301, 110 L.Ed.2d 112. While "[t]he plain view exception gives rise to probable cause, * * * it does not allow an officer to unlawfully trespass upon property to seize an item in the absence of a warrant, consent, or some other recognized exigency." *State v. Littell*, 2014-Ohio-4654, 21 N.E.3d 675, ¶ 10 (9th Dist.), citing *Soldal v. Cook County, Ill.*, 506 U.S. 56, 66, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) and *Brown*, 460 U.S. 730, 738-739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not

reasonably be crossed without a warrant." *Payton*, 445 U.S. at 590, 100 S.Ct. 1371, 63 L.Ed.2d 639.

{¶ 34} "[U]nder the rubric of exigent circumstances, a true emergency must exist which excuses the failure to obtain a warrant[.]" *State v. Burchett*, 2d Dist. Montgomery No. 20166, 2004-Ohio-3095, ¶ 17. "Whether exigent circumstances are present is determined through an objective test that looks at the totality of the circumstances confronting the police officers at the time of the entry." *State v. Enyart*, 10th Dist. Franklin Nos. 08AP-184 and 08AP-318, 2010-Ohio-5623, ¶ 21, citing *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990).

{¶ 35} In *Goode*, 2d Dist. Montgomery No. 25175, 2013-Ohio-958, we discussed exigent circumstances and explained that:

[T]he existence of a felony in progress within a home may involve circumstances that provide the exigency required to justify an officer's warrantless entry into the home. Where the particular felony creates an immediate need for an officer to enter the home for the protection of property or persons who may be inside, we have found the officer's entry to be lawful. *E.g., State v. Goodwin*, 2d Dist. Montgomery No. 23800, 2010-Ohio-6480 (exigent circumstances warranted entry into home where officers were dispatched due to a report of a burglary in progress). We emphasize, however, that the mere existence of a "felony in progress" does not justify the warrantless entry; not every felony demands urgent police entry into a home. For example, an officer's observation that a home contains marijuana may create probable cause that a felony is in progress,

but it might not necessarily create an urgent need to enter the home without a search or arrest warrant. *State v. Alihassan*, 10th Dist. Franklin No. 11AP-578, 2012-Ohio-825, ¶ 23 (the observance of marijuana and a grinder within a residence, alone, did not justify the police officer's warrantless entry). *See also, e.g., Horton v. California*, 496 U.S. 128, 137, fn.7, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *Coolidge v. New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Morgan*, 743 F.2d 1158, 1167 (6th Cir.1984) (warrantless entry into a private home is not justified by plain view doctrine "merely because an item of contraband has become visible to those outside"). A warrantless entry due to a felony in progress is only permitted where the particular circumstances of the felony demonstrate the existence of an exigent or emergency circumstance. *Goode* at ¶ 17.

**{¶ 36}** In this case, the State argues that exigent circumstances existed to justify the warrantless entry into the apartment because, under the circumstances of this case, it was reasonable for the officers to believe that the drug evidence was at risk of being destroyed if the officers did not immediately enter to secure the scene. It is well established that a warrantless entry is justified under exigent circumstances where there is imminent danger that evidence will be lost or destroyed if a search is not immediately conducted. (Citations omitted.) *State v. Moore*, 90 Ohio St.3d 47, 52, 734 N.E.2d 804 (2000). "[A] warrantless entry to prevent the destruction of evidence is justified if the government demonstrates: '(1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that these third parties may soon become aware the

police are on their trail, so that the destruction of evidence would be in order.' " *Enyart*, at ¶ 21, quoting *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir.2000).

**{¶ 37}** In *Goode*, we held that exigent circumstances involving the imminent destruction of evidence existed where an officer observed a hand-to-hand drug transaction inside a residence as he was approaching the door to the residence. *Goode* at ¶ 5-6 and 18-19. After knocking on the door, the officer advised the occupant who answered that he had just observed the occupant engage in a hand-to-hand drug transaction. While doing so, the officer observed other drug evidence inside the residence from the doorway. *Id.* at ¶ 6 and19. We held that "at that time, [the occupant] knew that the police were aware of his drug trafficking activity. And the officer could have reasonably believed that, if he waited to get a search warrant, [the occupant] would attempt to destroy the drugs in the residence, rather than allow them to be seized by police." *Id.*

**{¶ 38}** In *State v. Cheadle*, 2d Dist. Miami No. 00CA03, 2000 WL 966167, we held that exigent circumstances involving the imminent destruction of evidence existed where an officer observed an occupant of a residence, who he personally knew was under 21 years of age, engage in the consumption of alcohol. *Id.* at *1. The officer made this observation through the open front door of the residence. When the officer announced his presence, one of the other occupants started to close the front door; the officer used his foot to prevent the door from closing and entered the residence to obtain identification from all the occupants. *Id.* We held that when the officer entered the residence, he only had probable cause to believe that an offense was being committed by the occupant who he knew was under 21 years of age. *Id.* at 3. We further held that "[b]ecause evidence

that the State could use to prove that offense could readily be disposed of, the requirement that [the officer] obtain a warrant prior to entering for that purpose was subject to an exigent circumstances exception." *Id.* at *3.

{¶ 39} In *Alihassan*, 10th Dist. Franklin No. 11AP-578, 2012-Ohio-825, the Tenth District Court of Appeals found no exigent circumstances existed where an officer observed drugs and drug paraphernalia in plain view inside the defendant's apartment. The defendant in *Alihassan* was placed under arrest during a traffic stop after the investigating officer observed marijuana in his car. Because the defendant had his dog in the car with him, the officer accompanied the defendant to his apartment so that the defendant could drop off his dog before going to jail. When the defendant opened his apartment door to let his dog inside, the officer observed marijuana and a marijuana grinder in plain view on the defendant's coffee table. Upon seeing the drug evidence, the officer put his foot against the door and told the defendant he had seen the drugs and drug paraphernalia. The officer then entered the apartment and conducted a warrantless search of the apartment. The defendant moved to suppress the evidence discovered in his apartment, which the trial court denied on grounds that the officer observed it in plain view. *Id.* at ¶ 2-5

{¶ 40} On appeal, the Tenth District Court of Appeals reversed the trial court's decision on grounds that the officer did not have a lawful right of access to the marijuana and grinder that the officer observed in plain view. *Id.* at ¶ 12, 20-23. In so holding, the Tenth District found there were no exigent circumstances justifying the officer's warrantless entry into the apartment because there was no evidence of any third parties present in the apartment and no evidence that the marijuana and grinder were in danger

of destruction or removal. *Id.* at ¶ 22-23. The court also noted that there was no evidence that the defendant was even aware that the officer had seen the drug evidence on the coffee table or that any potential occupant would have known that the officer had seen the evidence. Under these circumstances, the court found there would have been no reason for an occupant to destroy the contraband while the officer obtained a search warrant. *Id.* at ¶ 23. The court therefore held that "the proper course of conduct would have been to have an officer stand at the doorway and guard the premises while a warrant was obtained based upon what [the officer] saw inside the apartment." *Id.*

{¶ 41} In *Kesler*, 111 Ohio App.3d 98, 675 N.E.2d 875, the Third District Court of Appeals found that no exigent circumstances existed where officers entered a residence after seeing drug evidence in plain view through a screen door. Through the screen door, the officers saw the defendant sitting on a couch with a dish on his lap, which he put into a drawer after noticing the officers outside the residence. The officers believed there was marijuana on the dish and immediately entered the apartment to arrest the defendant. Once inside, the officers saw two guns with bullets on a chair near the defendant. An officer moved the guns, and the defendant was forcibly made to stand for a weapons pat down. During the arrest, additional officers arrived and searched the remaining bedrooms in the apartment, finding drugs, guns, and cultivation tools. The trial court suppressed the evidence gathered from the bedrooms but declined to suppress the marijuana and guns that were discovered in plain view near the defendant. *Id.* at 99.

{¶ 42} On appeal, the Third District Court of Appeals reversed the trial court's decision not to suppress the evidence discovered in plain view. *Id.* at 103. In so holding, the court found that the facts were insufficient to justify the warrantless entry into

the home because "there was testimony that none of the marijuana was in the process of being destroyed and there was no reason why the officers could not have secured the premises and obtained a search warrant to search at a later time." *Id.* at 102-103. The court also noted that because the officer testified that he was fifteen feet away from the marijuana and did not explain how he was able to identify the marijuana, the officer likely only had reasonable suspicion, as opposed to probable cause, to believe the substance was marijuana. *Id.* at 102. The court further explained that:

> [T]he officers, believing what they saw to be marijuana, without giving any further thought to the requirements of the Fourth Amendment and without knocking or announcing, grabbed the door and walked inside appellant's apartment. There was no pending danger of injury to anyone, there was no immediate danger of destruction of contraband, and there was no evidence of flight. Thus, there was no compelling reason to justify the failure of law enforcement officers to place the matter before a detached and neutral judicial officer who could properly assess whether the officers had probable cause to obtain a valid warrant prior to entering appellant's home and searching and arresting him for what amounted to a minor misdemeanor offense.

*Id.*

{¶ 43} Unlike *Kesler* and *Alihassan*, in this case, Officers Rose and Miniard not only observed drugs in plain view, but they also observed an individual with a warrant for his arrest inside the apartment. In addition, the officer in *Kesler* did not announce his presence before entering the residence and only observed evidence of a minor

misdemeanor offense, to which the exigent circumstances exception does not apply. *See State v. Striks*, 2015-Ohio-1401, 31 N.E.3d 208, ¶ 19-31 (2d Dist.). "[A]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732. Here, the officers observed crack cocaine, the possession of which is a felony that is punishable by imprisonment and for which the exigent circumstances exception applied. R.C. 2925.11(C)(4)(a); R.C. 2929.14(A)(5); *Striks* at ¶ 19-31.

{¶ 44} Upon review, we find the present case is more analogous to the situations in *Goode* and *Cheadle,* wherein this court found it was reasonable for the officers to assume that the drugs were at risk of being destroyed if they waited to obtain a search warrant. Such an assumption was reasonable in this case because Shaw had a warrant for his arrest and the drug evidence was located only five feet from where the officers were standing. The record indicates that Garrett fully opened the inner front door to the apartment, giving the officers a clear view of the drug evidence from the doorway. Given the clear view and the officers' close proximity to the drug evidence, it is fair to assume that Garrett and Shaw were aware that the officers saw the drug evidence while they were speaking with the officers at the doorway. Therefore, under the circumstances of this case, it was reasonable for the officers to impute their knowledge of the drug evidence to Garrett and Shaw and to believe that the drug evidence was at risk of being destroyed if they did not immediately enter the apartment and preserve the scene.

{¶ 45} Although the officers could have lawfully entered the apartment and stood guard to protect the evidence while a search warrant was obtained, *State v. Burns*, 2d

Dist. Montgomery No. 22674, 2010-Ohio-2831, ¶ 22, ("when officers secure a residence pending a search warrant, they may enter that residence"), we find the officers' failure to do so in this case was not critical, given that no search of the apartment was performed when the officers entered the residence. Rather, the officers merely collected the drug evidence that was observed in plain view on the plastic storage bin in the living room and conducted pat-down searches of Garrett and Shaw.

**{¶ 46}** We note that the record indicates the drug evidence in plain view was sitting atop some junk mail that was lifted by the officer who collected it. Upon lifting the junk mail, the officer found additional drug evidence underneath. *See* Trans. (Feb. 10, 2017), p. 16. Because the drug evidence underneath the junk mail was not observable until the junk mail was lifted, it was not in plain view and its recovery constituted a search requiring a search warrant. Accordingly, the plain view doctrine cannot justify the warrantless seizure of the drug evidence underneath the junk mail. As a result, we conclude the drug evidence underneath the junk mail should have been suppressed.

**{¶ 47}** However, with regard to the drug evidence in plain view, we find that under the specific circumstances of this case, the officers were justified in entering the apartment to collect it. These circumstances include the fact that Shaw had a warrant for his arrest, that there were multiple complaints about drugs being sold from the apartment, that the apartment was in a high crime area, that the officers smelled marijuana emanating from the apartment, and that Garrett and Shaw had reason to believe the officers saw the drug evidence from the doorway. Therefore, under the specific circumstances of this case, we conclude the totality of the circumstances presented an exigency that justified the officers' warrantless entry into the apartment. As

a result of such exigency, we conclude that the officers had a lawful right of access to the drugs in plain view.

{¶ 48} In conclusion, because (1) the officers were lawfully positioned in a place from which the drug evidence could be plainly viewed, (2) the incriminating character of the drug evidence was immediately apparent, and (3) the officers had a lawful right of access to the drug evidence through exigent circumstances, the plain view doctrine justified the officers' warrantless entry into the apartment and the seizure of the drug evidence observed in plain view.

*The Pat-Down Searches*

{¶ 49} Garrett also contends the officers violated his Fourth Amendment rights by conducting two pat-down searches for officer safety without identifying any individualized suspicion that he possessed a weapon or posed a danger to the officers.  We disagree with Garrett's claim.

{¶ 50} Under *Terry,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889, a police officer may conduct a pat-down search for weapons when he has reasonable grounds to believe that the person has a weapon or otherwise endangers the officer's safety.  *State v. Taylor*, 2d Dist. Montgomery No. 15773, 1997 WL 24829, *3 (Jan. 24, 1997).  To justify a pat-down search, an officer must point to specific, articulable facts that create a "reasonable individualized suspicion that the suspect is armed and dangerous[.]" (Emphasis omitted.)  *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 18, citing *Terry* at 27. (Other citations omitted.)  "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the

circumstances would be warranted in the belief that his safety or that of others was in danger." (Citations and footnote omitted.) *Terry* at 27.

{¶ 51} The existence of reasonable suspicion is determined by evaluating the totality of the circumstances. (Citations omitted.) *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14. "These circumstances must be considered 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *State v. White*, 2d Dist. Montgomery No. 18731, 2002 WL 63294, *2 (Jan. 18, 2002), quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 52} "[I]t is well recognized that the need for a protective pat down becomes more urgent where drugs are involved." *Bales*, 2d Dist. Montgomery No. 24897, 2012-Ohio-4968, at ¶ 23. "Ohio courts have long recognized that persons who engage in illegal drug activities are often armed with a weapon." *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 17. " 'The very nexus between drugs and guns can create a reasonable suspicion of danger to the officer.' " *Bales* at ¶ 23, quoting *State v. Thompson*, 1st Dist. Hamilton No. C-050400, 2006-Ohio-4285, ¶ 11. "Recognizing the prevalence of weapons in places where illegal drugs are sold and used, this court has held that an officer's fear of violence when investigating drug activity is a legitimate concern that will justify a pat down search for weapons." *Martin* at ¶ 17, citing *State v. Taylor*, 82 Ohio App.3d 434, 612 N.E.2d 728 (1992). (Other citation omitted.)

{¶ 53} In this case, Officer Miniard testified that he and the other officers were at the apartment in question because their department received several drug trafficking complaints. Once at the apartment, Miniard testified that he observed a scale and

suspected illegal drugs in plain view and detected the odor of marijuana emanating from the apartment. Miniard also recognized the other occupant, Shaw, as an individual with an outstanding warrant for his arrest. When specifically asked why Garrett was patted down for officer safety, Officer Miniard testified that:

> Where there's drugs within the apartment already, one individual being placed under arrest, usually where you have guns, you have drugs. Unfortunately for Hilltop Apartments, it is filed under our CIRGV which is citizens reducing gun violence. It's one of our high areas that we have drug activity and gun activity. Due to that fact, when we come across individuals that have drugs or are not know[n] to the area or residents, even for officer safety, if I deal with them, I pat them down for officer safety. For that fact he was patted down.

Trans. (Feb. 10, 2017), p. 39.

**{¶ 54}** The totality of these facts and circumstances, viewed objectively through the eyes of the officer on the scene, warranted a reasonable belief that Garrett could have been armed and thus justified a pat-down search for weapons.

**{¶ 55}** Although there was justification for a pat down search, Garrett also argues that his Fourth Amendment rights were violated due to the fact that two pat-down searches were conducted. It is well established that "[t]he rationale for a protective search * * * becomes attenuated with successive searches." *State v. Hackett*, 171 Ohio App.3d 235, 2007-Ohio-1868, 870 N.E.2d 235, ¶ 16 (6th Dist.), citing *Jackson v. State*, 785 N.E.2d 615, 620 (Ind.App.2003). *Accord State v. Dunlap*, 7th Dist. Columbiana No. 12 CO 31, 2013-Ohio-5637, ¶ 33; *State v. Willette*, 4th Dist. Washington No. 11CA32,

2013-Ohio-223, ¶ 18; *State v. Bean*, 12th Dist. Butler No. CA2015-07-136, 2016-Ohio-876, ¶ 17. "Thus, the basis for a *Terry* search is diminished each additional time an officer searches a subject." *Dunlap* at ¶ 33. "When the use of multiple protective searches exceeds the rationale behind a *Terry*-type investigation, it becomes unreasonable." *Hackett* at ¶ 17, citing *Jackson* at 621. *Accord Bean* at ¶ 17. "Police are not entitled to 'unlimited bites of the apple.' " *Hackett* at ¶ 16, quoting *United States v. Davis*, 430 F.3d 345, 356 (6th Cir.2005).

**{¶ 56}** A second pat-down search has been found to be justified when the officer who conducted the second pat-down search did not observe the first pat down or was concerned with the adequacy of the first pat down. *Bean* at ¶ 17; *Willette* at ¶ 22; *State v. Davis*, 2d Dist. Montgomery No. 22572, 2008-Ohio-2885, ¶ 16 (holding that it was lawful for a female officer to conduct a second pat down of a female suspect where the first pat down was conducted by a male officer "who might be more restrained when patting down a female").

**{¶ 57}** In this case, there is nothing in the record indicating whether Officer Halloway knew, prior to patting Garrett down, that Officer Rose had already conducted a pat-down search or whether Officer Halloway was concerned with the adequacy of Officer Rose's pat-down search. Nevertheless, a scale and crack cocaine were observed sitting five feet away from Garrett in plain view before both pat-down searches were conducted. Based on that evidence, the officers had probable cause to arrest Garrett for possession of drugs. *State v. Carter*, 2d Dist. Montgomery No. 19105, 2002 WL 538871, *2 (Apr. 12, 2002), citing *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ("[p]robable cause to arrest exists when a reasonably prudent person would be warranted

to believe (1) that a crime has been committed and (2) that the defendant committed it" ); *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18 ("[p]ossession of a drug may be either actual physical possession or constructive possession. * * * A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession"); *State v. Sisson*, 2d Dist. Montgomery No. 22173, 2008-Ohio-3490, ¶ 10 ("[c]onstructive possession has been found when the drugs are in plain view in an area shared with another").

**{¶ 58}** "The right of police officers to search a suspect incident to a lawful arrest has been a long-recognized exception to the warrant requirement of the Fourth Amendment." (Citations omitted.) *State v. Jones*, 112 Ohio App.3d 206, 215, 678 N.E.2d 285 (2d Dist.1996). "Pursuant to a search incident to arrest, the police may conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." *Id.*, citing *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). (Other citation omitted.) Furthermore, "the actual arrest need not precede the search as long as the fruits of the search are not used to support probable cause for the arrest." *Id.*, citing *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *State v. Tillman*, 2d Dist. Montgomery No. 14060, 1993 WL 385821, *4 (Sept. 30, 1993); *State v. Taylor*, 2d Dist. Montgomery No. 25169, 2013-Ohio-814, ¶ 35.

**{¶ 59}** In this case, after the drug evidence was observed by the officers in plain view and after Officer Rose patted down Garrett and found marijuana located on his person, Officer Halloway patted Garrett down a second time, found crack cocaine on his

person, and then placed him under arrest. Because the evidence observed in plain view had already provided probable cause to arrest Garrett before Halloway's search, Halloway's search was not in violation of the Fourth Amendment, as it was a lawful search incident to arrest. It is immaterial that Halloway conducted his search of Garrett before placing him under arrest since the probable cause to arrest was not based on the fruits of Halloway's search.

## Conclusion

{¶ 60} Garrett's assignment of error is overruled as to the drug evidence observed in plain view on the plastic storage bin and as to the drug evidence discovered on Garrett's person during the pat-down searches. Garrett's assignment of error is sustained as to the drug evidence that was discovered underneath the junk mail. Therefore, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for the trial court to determine what drug evidence was discovered underneath the junk mail and to issue a decision and entry suppressing only that evidence.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Sean Brinkman
Hon. Dennis J. Adkins